UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
:
AMY LARIMER, :
:
Plaintiff, :
: 23-CV-_____
- against - :
: **COMPLAINT**
LEHMAN COLLEGE - CUNY, :
: **JURY TRIAL DEMANDED**
Defendant. :
:
------------------------------------------------------------------- x

Plaintiff Amy Larimer ("Larimer"), by and through her attorneys, Cerasia Law LLC, for her Complaint against defendant Lehman College - CUNY (the "College"), alleges as follows:

## PRELIMINARY STATEMENT

1. Larimer is a female and tenured Professor at the College. In 2007, the College hired her as a lecturer and she began running the Dance Program at the College. Larimer has been the Director of the Dance Program at the College since 2008.

2. In 2007, the Dance major was inactive. Larimer has been instrumental in the development and growth of the Dance Program at the College. To rebuild the Program, Larimer started the Bronx Dance Workshop to generate an interest in the Program. This allowed the students the opportunity to choreograph and perform. While rebuilding the Dance Program from 2007 to 2014, Larimer handled all the scheduling, advising, performance production, adjunct supervision, recruitment, curricular, development, promotion, and other administrative work for the Program. Between 2014 and 2016, Larimer was the Director of both the Dance Program and the Theatre Program at the College.

3.      Despite her accomplishments and growth of the Dance Program, the College has paid her less than comparable male faculty. The gender-based pay disparity became so clear that, on June 9, 2022, Dr. James Mahon ("Mahon"), Dean of the School of Arts and Humanities at the College, wrote a letter to the College's Provost and members of the HEO Labor Management Committee at the College about the gender discrimination against Larimer, stating:

> I am writing this letter to request a two-step increase. . . for Prof. Amy Larimer . . . due to her being underpaid, as a woman, for many years that she was the Director of the Dance program (2007-present) and Interim Director of the Theater program (2014-2016), when the men who were hired to be the Director of the Theater program . . . were all hired at higher salaries than her, even though she did their work as Theater Director for two years in addition to her own work as Dance Director for those two years.

4.      When the College hired one of the males, David Sullivan ("Sullivan"), as Director of the Theatre Program in 2011, his salary was five "steps" above Larimer's salary, resulting in Sullivan receiving $14,285 more in annual salary than Larimer, even though she performed equal or similar work as Sullivan, and more work than him while she was directing both the Dance and Theater Programs. The difference between their salaries over three years was $42,855.

5.      When the College hired Rick DesRochers ("DesRochers") in 2016 as the Director of the Theater Program, DesRochers was paid a salary that was three steps above Larimer's salary, which resulted in DesRochers receiving $8,457 more than Larimer in annual salary. DesRochers has been paid a higher salary than Larimer since 2016, earning $50,745 more than Larimer since that time. Until he was hired by the College, DesRochers had not directed a program. Larimer, however, had been directing the Dance Program for nine years and the Theater/Dance Program for two years before DesRochers was hired. As a result of her experience managing a program, Larimer was heavily involved with mentoring DesRochers for the first two years of his employment at the College.

2

6. The combined difference between Larimer's salary and the salaries of these men hired at higher salaries than her was $81,805 through 2022 and, based upon information received by Larimer, the total difference in salary is over $93,000 at the present time, which highlights the clear pay discrimination against her. Additionally, this difference in salary between Larimer and her male colleagues does not include the two years when there was no male Director of the Theatre Program and Larimer was doing the entirety of the work of the Director of the Theatre Program and Director of the Dance Program, and she was receiving only half the reassigned time that DesRochers received for being the Director of the Theater Program only.

7. Larimer requested an increase in her salary to be on par with male faculty, including when she was promoted to full Professor in August 2022, but the College denied her request. Then, in early-2023, Larimer raised her gender discrimination claims with Dawn Ewing Morgan ("Morgan"), then Dean of the Office of Diversity, Equity and Inclusion at the College. Even then, Larimer's complaint was completely disregarded by Morgan, who stated the College did not have the funds to pay Larimer a higher salary. Not having money to pay Larimer's salary is not a valid defense to gender discrimination.

8. As a result of the College's actions, Larimer brings this lawsuit against the College for gender-based pay discrimination under the Equal Pay Act (the "EPA"), 29 U.S.C. § 206(d), to redress the College's continuous violation and pattern of gender discrimination against her by paying male employees higher wages than her for equal work in a job which required equal skill, effort, and responsibility, and which was performed under similar working conditions, and gender-based pay discrimination under Title IX of the Civil Rights Act of 1964 ("Title IX"), 42 U.S.C.

§ 2000d.[1] Larimer seeks declaratory and injunctive relief, lost wages and benefits, liquidated damages under the EPA, along with attorneys' fees, costs and interest.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Larimer's EPA and Title IX claims pursuant to 28 U.S.C. §§ 1331 and 1343.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

11. Larimer, who resides in Manhattan, is a tenured Professor at the College.

12. The College is the City University of New York's only four-year college in Bronx, New York, providing undergraduate and graduate studies to a student body of more than 14,000 students. The College receives federal financial assistance in operating its educational system.

## FACTS

13. Larimer holds a B.A. in Dance from Connecticut College and an M.F.A. in Dance from the University of Wisconsin at Milwaukee.

14. In 2003, the College hired Larimer as an adjunct in the Department of Journalism, Communication and Theatre. Larimer taught in an adjunct capacity until 2006, when she finished her M.F.A.

---

[1] On October 25, 2023, Larimer filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), asserting a claim for gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). At the appropriate time, Larimer will request a right to sue notice from the EEOC and seek leave to file an amended complaint to add a claim for gender discrimination under Title VII, along with demands for compensatory and punitive damages.

15.     The College hired Larimer as a lecturer in 2007, when she began running the Dance Program. In 2008, the College hired her full-time as a tenure-track Assistant Professor and as Director of the Dance Program. She continues to be the Director of the Dance Program at the College.

16.     Larimer has been instrumental in the development and growth of the Dance Program at the College. For example, in 2007, the Dance major was inactive. To rebuild the Program, Larimer started the Bronx Dance Workshop to generate an interest in the Program which allowed the students the opportunity to choreograph and perform. From 2007 to 2014, Larimer handled all the scheduling, advising, performance production, adjunct supervision, recruitment, curricular, development, promotion, and other administrative work for the Dance Program. During these years, Larimer never received reassigned time for being Director of the Dance Program. "Reassigned time" is a reduction in the normal teaching load for academic-year faculty, and the time that normally would be spent on teaching is reassigned to accomplish some other tasks.

17.     Between 2014 and 2016, Larimer was the Director of both the Dance Program and the Theatre Program at the College. In 2016, Larimer went back to being the Director of the Dance Program only. Throughout the years, she added to the curriculum by creating the minor in Dance, the B.F.A. degree in Theatre/Dance, the new B.A. in Dance, and the minor in Body and Wellness. Additionally, Larimer has collaborated with the faculty in the Theatre Program to create the Multimedia Performing Arts B.F.A.

18.     Larimer's invaluable contributions to the College were recently acknowledged with her promotion to full Professor in August 2022. When she was promoted to full Professor, she requested that the College increase her salary to be on par with male faculty, but her request was denied.

19.     Mahon addressed the longstanding gender-based pay discrimination against Larimer in a June 9, 2022 letter to the Provost and members of the HEO Labor Management Committee at the College. In his letter, Mahon made clear that Larimer experienced at least $81,805 in lost wages as a result of this pattern of gender discrimination through early-June 2022. This amount does not include her loss of corresponding retirement contributions associated with a higher salary and reassignment time.

20.     The letter written by Mahon includes facts highlighting the differential in pay for Larimer and two of her male colleagues. In his letter, Mahon stated that, "due to her being underpaid, as a woman, for the many years that she was director of the Dance Program and Interim Director of Theatre Program – David Sullivan and Rick Desrochers, respectively were all hired at higher salaries than her, even though she did their work as Theatre Director for two years in addition to her own work as Dance Director for those two years."

21.     In 2011, the College hired Sullivan. He worked as Deputy Chair of the Theatre Program while Larimer continued to be the Director of the Dance Program. When Sullivan was hired in 2011, he was hired at a salary that was five steps above Larimer's salary, with Sullivan earning $14,285 more in annual salary than Larimer. "Steps" are the salary step-ups in the labor agreement. Over the three-year period up to June 2022, the College paid Sullivan a total of $42,855 more in salary than it paid Larimer over those years. Larimer was paid less than Sullivan for equal work that required equal skill, effort, and responsibility as Sullivan, and which was performed under similar working conditions. In addition, the College granted Sullivan reassigned time each semester, while Larimer received none.

22.     In 2014, Sullivan left the College for a position at UNC Greensboro. At that time, the College asked Larimer to be the interim Director for the Theatre Program, in addition to the

Director of the Dance Program, for two years. The College also asked Larimer to do the prioritization report for both the Dance and Theater Programs, as well as serve on the department Personnel and Budget Committee, chair two search committees and serve on a third search committee. Taking on that added responsibility doubled her workload, but she did not receive the proper salary, retirement contributions or amount of reassigned time for those roles. Larimer only received three hours of reassigned time per semester.

23. In 2015, Larimer was promoted to Associate Professor. She requested a salary increase at the time of her promotion, but the College denied her request.

24. In 2016, the College hired DesRochers to replace Sullivan as the Director for the Theatre Program. DesRochers was hired at a salary that was three steps above Larimer's salary at that time. This resulted in DesRochers making $8,457 more than Larimer in annual salary at that time. In addition, the College gave DesRochers six hours of reassigned time per semester for his work for the Theatre Program, whereas Larimer was only allotted three hours of reassigned time per semester for her work. During the early years of DesRochers' employment at the College, Larimer worked as his mentor, despite being paid less and receiving less reassigned time than DesRochers, and she was still involved in most aspects of the Theatre Program administration.

25. DesRochers has been paid a higher salary than Larimer since 2016, which is expected to be true in 2024, too. The difference in their 2016-2017 salary was $8,457; the difference in their 2017-2018 salary was $5,963; the difference in their 2018-2019 salary was $2,583; the difference in their 2019-2020 salary was $2,688; the difference in their 2020-2021 salary was $9,439; the difference in their 2021-2022 salary was $9,820; the difference in their 2022-2023 salary was $2,472; the difference in their 2023-2024 salary will be $9,323. Thus, since 2016, the College paid DesRochers at least $50,745 more in salary than it paid to Larimer. Larimer

is at least as skilled and experienced as DesRochers, but she has been and continues to be paid less than DesRochers for equal work that required or requires equal skill, effort, and responsibility as DesRochers, and which was and is performed under similar working conditions.

26. Notably, the College continued to pay Larimer a lower salary than DesRochers even after Mahon informed the College in June 2022 that it was paying Larimer a lower salary because she is a woman, and even though she was promoted to full Professor in August 2022, when DesRochers still held the title of Associate Professor.

27. As Mahon's letter states, the combined difference between Larimer's salary and the salaries of the men (Sullivan and DesRochers) hired at higher salaries than her salary was $81,805 as of June 2022, which does not include the two years when there was no male Director of Theatre, and Larimer was doing the entirety of the work of the Director of the Theatre Program and the Director of the Dance Program, with less reassigned time when compared to male faculty. Based upon information available to Larimer, the total difference in her salary versus male faculty is over $93,000 since at least 2011.

28. Larimer's low salary is a result of her being paid less, over the years, for doing work that required or requires equal skill, effort, and responsibility as males and which was and is performed under similar working conditions.

29. Despite the admission of gender discrimination in the letter from Mahon, the highest-ranking administrator in the School of Arts and Humanities at the College, the College has turned a blind-eye to the clear gender-based wage disparities and has taken no action in making Larimer whole for the blatant pattern of gender discrimination she has faced.

30. While the College increased Larimer's salary in 2023, that increase was contractual under the labor agreement, and it still did not raise her salary equal to her male colleagues, let

alone address the underpayment in salary and corresponding retirement contributions over the years or her loss of reassigned time over the years.

31. In fact, in early 2023, Larimer raised her gender discrimination claims with Morgan, then Dean of the Office of Diversity, Equity and Inclusion at the College. Larimer's complaint was disregarded, as Morgan informed her that the College did not have the funds to pay her more. The lack of funds is not a valid defense to gender discrimination.

32. The College's deplorable and inexplicable conduct, as described above and continuing throughout Larimer's employment, demonstrates a willful and reckless disregard for her rights under the applicable laws and has caused her to lose wages and benefits.

## FIRST CAUSE OF ACTION
### Gender-Based Pay Discrimination In Violation Of The EPA

33. Larimer incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

34. By the acts and practices described above, the College, in violation of the EPA, has discriminated against Larimer by paying male employees higher wages than Larimer for equal work in a job which required or requires equal skill, effort, and responsibility, and which was and is performed under similar working conditions.

35. As a direct and proximate result of the College's unlawful discriminatory pay practices, which constitutes a continuing violation, Larimer has lost wages and benefits, including, but not limited to, retirement contributions and reassigned time.

36. The College's unlawful and discriminatory conduct constitutes a willful violation of the EPA and was done with conscious or reckless disregard of her rights under the EPA, entitling her to liquidated damages.

## SECOND CAUSE OF ACTION
### Gender Discrimination In Violation Of Title IX

37. Larimer incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

38. By the above acts and practices, the College has discriminated against Larimer on the basis of her gender in violation of Title IX.

39. As a direct and proximate result of the College's gender-based pay discrimination, which constitutes a continuing violation, Larimer has lost wages and benefits, including, but not limited to, retirement contributions and reassigned time.

## PRAYER FOR RELIEF

WHEREFORE, Larimer prays that this Court enter judgment in her favor and against the College and grant to her the following relief:

a. A declaratory judgment that the actions, conduct and practices of the College complained of herein violate the EPA and Title IX, and enjoining and permanently restraining these violations;

b. An injunction directing the College to take such affirmative steps or action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Larimer's employment or her employment opportunities;

c. An award for all economic damages to be determined at trial to compensate Larimer and make her whole for the College's unlawful, gender-based pay discrimination, including all back pay and lost benefits, including, but not limited to, retirement contributions and reassigned time;

d. An award to Larimer for liquidated damages under the EPA;

e. An award to Larimer for the costs incurred in this lawsuit, together with reasonable attorneys' fees;

f. An award to Larimer for pre- and post-judgment interest; and

g. Such other and further relief as this Court deems appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Larimer demands a trial by jury in this case.

Dated: November 30, 2023

CERASIA LAW LLC

By *(signature: Edward Cerasia II)*
Edward Cerasia II
101 Eisenhower Parkway, Suite 300
Roseland, New Jersey 07068
646.525.4231
ed@cdemploymentlaw.com

Attorneys for Plaintiff
*Amy Larimer*